## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAYLE LEWANDOWSKI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MEGABUS USA, LLC and<br>MEGABUS NORTHEAST, LLC d/b/a<br>MEGABUS.COM,<br><br>　　　　　Defendants. | Case No. |

## COMPLAINT

Plaintiff Gayle Lewandowski ("Plaintiff"), through her undersigned counsel, brings this complaint against Defendants Megabus USA, LLC and Megabus Northeast, LLC, doing business as "Megabus.com", (collectively, "Defendants" or "Megabus"), and asserts as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendants under Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* and its implementing regulations, in connection with Defendants' failure to ensure their buses are readily accessible, resulting in the denial of Plaintiff's full and equal enjoyment of Defendants' transportation services.

2. Megabus is an intercity bus service that operates throughout the United States and Canada, offering economy fares for regional transportation.

3. Plaintiff is an individual who, at all times relevant for purposes of this action, has had a legal mobility disability as defined by the ADA, 42 U.S.C. § 12102(2), and who uses a wheelchair for mobility.

4. Although Megabus purports that its buses are accessible to those who use wheelchairs or scooters, including through the provision of lifts, Plaintiff has been repeatedly denied access to Defendants' transportation services or forced to suffer unreasonable delays and hardships because of Defendants' failure to ensure its buses are readily accessible.

5. Specifically, Megabus fails to ensure that its assistive equipment, such as lifts, are functional and operable for active use when a customer with a mobility disability requires assistance boarding or de-boarding a bus. Instead, the assistive equipment is broken or inoperable a disproportionate and unreasonable amount of time, resulting in the denial of transportation services for individuals with mobility disabilities, like Plaintiff, on a full and equal basis.

6. Defendants' policies and practices cause passengers with mobility disabilities who require assistive equipment to be subjected to grossly different travel experiences than passengers who do not require such equipment.

7. Defendants' repeated and continued failures to ensure its buses are readily accessible, and the resulting denial of Plaintiff's full and equal access to and enjoyment of Megabus' transportation services, is discriminatory and prohibited by the ADA.

8. Defendants' failings have caused Plaintiff to suffer hardship, including disruption of travel plans, stress, anxiety, embarrassment, and monetary losses.

9. Plaintiff seeks declaratory and injunctive relief pursuant to Title III of the ADA, requiring Defendants to take all steps necessary to ensure their buses are equipped with functional and operable assistive equipment to aid with the boarding and de-boarding of customers who use wheelchairs or scooters, in compliance with the requirements set forth in the ADA and its implementing regulations, so that the buses are readily accessible to customers who use wheelchairs or scooters at the time of their pre-arranged travel.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

11.     Plaintiff's claims asserted in this complaint arose in this judicial district, and Defendants do substantial business in this judicial district.

12.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

13.     Plaintiff Gayle Lewandowski is and, at all times relevant hereto, was a resident of Allegheny County, Pennsylvania. As described above, Plaintiff has a mobility disability and uses a motorized wheelchair for mobility. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

14.     Defendant Megabus USA, LLC is a foreign limited liability company organized under Delaware law, registered to do business in Pennsylvania, and is headquartered at 4400 South Racine Ave, Chicago, IL 60609.

15.     Defendant Megabus Northeast, LLC is a foreign limited liability company organized under Delaware law, registered to do business in Pennsylvania, and is headquartered at 349 First St, Elizabeth, NJ 07206.

## FACTUAL ALLEGATIONS

### PLAINTIFF'S EXPERIENCES

16.     Plaintiff regularly travels by bus primarily for leisure travel and shopping purposes. She routinely uses Defendants' transportation services for travel.

17. Within the past year, Plaintiff has traveled round-trip on Defendants' buses on multiple occasions, including but not necessarily limited to the following dates: August 1, 2019; September 5, 2019; November 4, 2019; January 7, 2020; and February 4, 2020.

18. During each trip, Plaintiff has been denied access to Defendants' buses due to malfunctioning wheelchair lifts. When Plaintiff has attempted to travel by Megabus, she has routinely been subjected to a humiliating and frustrating process of *her* having to accommodate *Megabus* while it scrambles to provide belated access.

19. In an attempt to ensure that she has access to Defendants' buses, and to avoid future difficulties, Plaintiff has notified Megabus, through its customer service representatives and bus drivers, on multiple occasions in advance of her travels, that she is a customer with a mobility disability who uses a wheelchair and will need assistance boarding and de-boarding.

20. She also has provided Megabus with more than 48 hours' notice of the dates and times of her upcoming travels, advising that she would need assistance boarding and de-boarding in order to ensure that the bus would be readily accessible for her.

21. Despite these efforts, time-after-time, Plaintiff has arrived to board her bus only to be met with inaccessible conditions causing her to have to wait for another bus, to wait until a mechanical issue is repaired, to find alternative transportation, or to cancel her plans.

22. While all other passengers are able to freely and timely board their bus for their prearranged travels, Plaintiff has been forced to repeatedly endure inaccessible conditions during the boarding process that results in her travels being delayed, often by hours, and causes her significant emotional and psychological harm.

23. For example, in August 2019, Plaintiff could not board a Megabus during a return trip from Morgantown, West Virginia because of an inaccessible lift. The bus, as a result, was

delayed while the bus driver attempted to try and accommodate Plaintiff. According to Plaintiff, several passengers became impatient from the wait and then offered to physically lift Plaintiff's wheelchair, which is a heavy power-chair, onto the bus. They also offered to help remove the wheelchair from the bus at arrival. Plaintiff accepted the offer. Her chair was lifted onto the bus by the passengers, and the bus was able to complete its return trip to Pittsburgh. However, upon arrival, the passengers who assisted Plaintiff with her chair had disappeared. The bus driver called emergency services in the hopes that the fire department could possibly help remove her wheelchair. An Officer Zimmerman arrived on the scene but explained that they were unable to help because Megabus is a private company. The bus driver then called Megabus for assistance, and a mechanic was eventually dispatched to fix the lift.

24. A month later, in September 2019, Plaintiff had another round-trip journey to Morgantown, West Virginia that she booked through Megabus. Three days before the trip, Plaintiff called Megabus to verify that they were aware she was a wheelchair user who would need assistance, indicating that she did not want a repeat of her last experience. She spoke with a representative named, on information and belief, Ashmanee, who stated that there was no information in her record indicating that Plaintiff was a wheelchair user who would need assistance but that she would update the information.

25. When Plaintiff attempted to board for her return trip to Pittsburgh, however, the bus was once again inaccessible due to a broken lift. The bus driver attempted to fix the lift for a significant amount of time. Eventually, after the bus driver was unable to fix the lift, she asked if Plaintiff would take an alternative transportation service, which Plaintiff declined. After an additional three hour delay, a new bus was dispatched that could accommodate Plaintiff.

26. In November 2019, again during a return trip from Morgantown, West Virginia, Plaintiff was subjected to the same experience as before due to a malfunctioning lift, resulting in an approximately two and a half hour delay. However, this incident left Plaintiff particularly shaken because she was also unable to disembark once the bus arrived in Pittsburgh, where she had to remain for an additional two and half hours, causing her to suffer emotional distress and anxiety.

27. In early January 2020, Plaintiff was delayed once again because of a broken lift. Megabus suggested that Plaintiff wait for a later departing bus, however, that would have required Plaintiff to stay overnight.

28. The most recent incident occurred in early February 2020 when Plaintiff's bus was once again delayed due to a malfunctioning lift.

29. Plaintiff has been, and will continue to be, deterred from returning to and safely accessing Defendants' transportation services so long as Defendants' buses remain non-compliant, and so long as Defendants continue to employ the same policies, practices, and procedures that have led, and will lead, to inaccessible transportation services.

30. Nonetheless, Plaintiff would like to continue using Defendants' transportation services, both for travel purposes and to survey the services for compliance with the ADA.

## PLAINTIFF'S PURCHASES

31. Plaintiff has only purchased her Megabus tickets through Defendants' telephonic ticketing service. Because Plaintiff is not especially technologically-savvy, she typically prefers to make her purchases offline, and she has never purchased a Megabus ticket through Defendants' online services or in any other form other than by calling 1-877-462-6342 and following the prompts to purchase a ticket.

6

32. After the prompts, a Megabus ticketing agent eventually finalizes the purchase by asking for credit card information and related purchasing details.

33. Although the agent states in some manner that the tickets may be subject to applicable terms, when Plaintiff has asked where those terms are located and what the terms specifically are, she has been told: (1) she should arrive at least fifteen minutes early before the departure time; (2) luggage size and weight specifications; (3) children need to be accompanied; (4) the purchase is non-refundable; and (5) that if she wants, she can look online at Defendants' website for the full terms and conditions.

34. Plaintiff has difficult navigating the web and has not been able to access Defendants' website to review the full terms and conditions.

35. But even if she could, at no point has Plaintiff ever been directed by Defendants to the specific web address of any terms and conditions, or explained what those terms and conditions are in detail.

36. Significantly, at no point has Plaintiff ever been advised or informed by Defendants that her purchase may be subject to an arbitration agreement.

37. Plaintiff has never seen, has no knowledge of, and has never agreed to any agreement that would subject her claims to arbitration or that would bar her from bringing suit in this forum.

## **DEFENDANTS' DISCRIMINATE AGAINST PLAINTIFF**

38. Defendants provide transportation services across the United States, offering fares as low as one dollar for their intercity bus services.

39. Defendants are a fixed route private transportation service that engages in the business of transporting people, and whose operations affect commerce within the meaning of 42 U.S.C. § 12184(a) and 49 C.F.R §§ 37.3 and 37.5.

40. Defendants are a public accommodation that operates Over the Road Buses ("OTRB") within the meaning of 42 U.S.C. § 12185(5) and 49 C.F.R. § 37.3, and a large operator (Class I motor carrier) within the meaning of 49 C.F.R. § 1420.3.

41. Accordingly, as a large ORTB fixed route operator, Defendants are required to ensure their buses are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12184(b)(4)(A) and 49 C.F.R. §§ 37.183(a) and 37.185.

42. Failure to provide full and equal enjoyment of the specified public transportation services provided by Defendants to the general public constitutes discrimination under the ADA. 42 U.S.C. § 12184.

43. As the owner, operator, and/or manager of their transportation services, Defendants rely on centralized operational policies, practices, and procedures with respect to the accessibility of their transportation services, facilities, and equipment.

44. However, as set forth herein, these policies, practices, and procedures result in a denial of full and equal access to Defendants' transportation services for individuals with mobility disabilities, like Plaintiff.

45. As evidenced by the repeated instances of inaccessibility endured by Plaintiff, absent the relief requested in this matter, Plaintiff will continue to be denied full and equal enjoyment of Defendants' transportation services.

46. Accordingly, Plaintiff seeks an injunction to compel Megabus to modify its policies, practices, and procedures that have created or allowed, and will create or allow, inaccessible transportation services.

## CAUSE OF ACTION

## VIOLATION OF TITLE III OF THE ADA

47. The allegations set forth in the previous paragraphs are incorporated by reference.

48. Defendants have engaged in illegal disability discrimination by, without limitation, failing to ensure that their transportation services are readily accessible to and usable by individuals with mobility disabilities by failing to ensure that assistive equipment for their buses is functional and operable for active use when a customer with a mobility disability requires assistance boarding or de-boarding a bus at the time of their pre-arranged travel, and/or by failing to ensure that personnel are trained to proficiency with respect to the identification and/or provision of accessible transportation services.

49. Defendants' ongoing failure to provide Plaintiff full and equal enjoyment of their transportation services constitutes unlawful discrimination on the basis of a disability in violation of 42 U.S.C. § 12184(a).

50. Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

51. Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and others with mobility disabilities.

52. Given that Defendants have not complied with the ADA's requirements to make its facilities fully accessible to, and independently usable by, individuals with mobility disabilities,

Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA and its implementing regulations described above, as described above;

b. A permanent injunction which directs Defendants to take all steps necessary to bring its transportation services into full compliance with the requirements set forth in the ADA, so that they are fully accessible to, and independently usable by, individuals with mobility disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendants certify that Defendants are fully in compliance with the relevant requirements of the ADA with respect to the provision of accessible transportation services to ensure that Defendants have adopted an institutional policy and practice that will in fact cause Defendants to remain in compliance with the law;

c. Payment of costs of suit;

d. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, and/or nominal damages; and,

e. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated:  February 14, 2020                         Respectfully Submitted,

                                                  By: /s/ *R. Bruce Carlson*
                                                  R. Bruce Carlson
                                                  Kelly K. Iverson
                                                  Bryan A. Fox
                                                  **CARLSON LYNCH LLP**
                                                  1133 Penn Avenue, 5th Floor
                                                  Pittsburgh, PA 15222
                                                  Tel: 412-322-9243
                                                  Fax: 412-231-0246
                                                  bcarlson@carlsonlynch.com
                                                  kiverson@carlsonlynch.com
                                                  bfox@carlsonlynch.com

                                                  *Counsel for Plaintiff*