IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAYLE LEWANDOWSKI,<br><br>    *Plaintiff,*<br><br>v.<br><br>MEGABUS USA, LLC and MEGABUS NORTHEAST, LLC *doing business as* MEGABUS.COM,<br><br>    *Defendants.* | Civil Action No. 2:20-cv-241<br><br>Hon. William S. Stickman IV |

## **OPINION**

WILLIAM S. STICKMAN IV, District Judge

  Defendants Megabus USA, LLC and Megabus Northeast, LLC d/b/a Megabus.com (collectively "Megabus" or "Defendants") filed a Motion to Compel Arbitration and Dismiss Plaintiff's Complaint with a brief in support. (ECF Nos. 5 and 6). Megabus notified the Court that the American Arbitration Association ("AAA") accepted its Demand for Arbitration. (ECF No. 18). Plaintiff Gayle Lewandowski ("Plaintiff" or "Lewandowski") strenuously opposed the arbitration demand, arguing that there was no enforceable arbitration agreement between her and Megabus. After careful review of the record and the parties' arguments, the Court holds that the parties did not enter into an enforceable arbitration agreement. Therefore, the Court DENIES the Motion to Compel Arbitration and DENIES the motion to dismiss Plaintiff's Complaint.

## **FACTUAL BACKGROUND**

  The facts necessary for the disposition of the Motion to Compel Arbitration are straightforward and not in dispute. "Megabus is an intercity bus service that operates throughout the United States and Canada, offering economy fares for regional transportation." Plaintiff's

1

Complaint ("Compl.") ¶ 2. Plaintiff filed a Complaint against Megabus alleging a single cause of action – a violation of Title III of the Americans with Disabilities Act. (ECF No. 1). Plaintiff has a mobility disability and uses a motorized wheelchair. *Id.* at ¶¶ 3, 13. She alleges that she "routinely uses Defendants' transportation services for travel," and she traveled on "Megabus" branded motorcoaches including, but not limited to, August 1, 2019, September 5, 2019, November 4, 2019, January 7, 2020, and February 4, 2020. *Id.* at ¶¶ 16-17. During each trip, she was denied access to Megabus' buses due to a malfunctioning wheelchair lift. *Id.* at ¶ 18.

Megabus sells bus tickets online and over the telephone. Plaintiff claims that she "is not especially technologically-savvy," and "prefers to make her purchases offline." *Id.* at ¶ 31. Prior to each trip, she purchased her ticket through Megabus' telephonic ticketing service. *Id.* at ¶ 31. She followed the telephonic prompts to purchase a ticket which culminated in a ticketing agent finalizing her purchase by asking for her credit card information. *Id.* at ¶ 32. Each time she purchased a ticket via telephone, the ticketing agent informed Plaintiff that the ticket "may be subject to applicable terms." *Id.* at ¶ 33. When Plaintiff "has asked where those terms are located and what the terms specifically are, she has been told: (1) she should arrive at least fifteen minutes early before the departure time; (2) luggage size and weight specifications; (3) children need to be accompanied; (4) the purchase is non-refundable; and (5) that if she wants, she can look online at Defendants' website for the full terms and conditions." *Id.*

The Terms and Conditions on Megabus' website, https://us.megabus.com, include the following preamble:

> These Terms and Conditions govern your access and/or use of this website, purchasing a ticket and/or services through this website, use of a Megabus vehicle or other motorcoach services. Your acceptance of these Terms and Conditions constitutes your agreement to be legally bound by them, which establishes a contractual relationship between you and Megabus. If you do not agree to these Terms and Conditions, you may not purchase a ticket and/or services through this

> website, use a Megabus vehicle or any other motorcoach service, or use this website.

Defendants' Brief In Support of Motion to Compel Arbitration (ECF No. 6), Exhibit A ¶I.A. The Terms and Conditions include the following arbitration clause:

> [Y]ou and/or the relevant Megabus Operating Carrier (including any non-affiliated, third-party motorcoach operator referenced above, or otherwise) may elect to resolve any dispute, claim or controversy (collectively, "Claims") by individual arbitration. Such claims include, but are not limited to, all disputes between the parties arising out of, or in any way relating to: motorcoach services; loss, damage or injury to persons and/or property transported by a Megabus Operating Carrier or one of its authorized, non-affiliated motorcoach operators; claims of discrimination; the use of the megabus.com website and its implementation; and these Terms and Conditions or the breach, termination, enforcement, interpretation or validity thereof.
>
> Arbitration may be commenced by either party at any time. [....]
>
> \* \* \*
>
> The Federal Arbitration Act will govern the interpretation and enforcement of this Section

*Id.* at Ex. A ¶ 4.A (in relevant part). Lastly, the Terms and Conditions state: "[i]f arbitration is chosen by either party, neither you nor Megabus Operating Carrier(s) will have a right to litigate that Claim in court or have a jury trial on that Claim." *Id.* at Ex. A. ¶4.B.

Plaintiff claims that she has difficulty navigating "the web," and "has not been able to access Megabus' website to review the full terms and conditions." Compl. ¶ 34. She also alleges that no ticketing agent ever told her that her purchase may be subject to an arbitration agreement. *Id.* at ¶ 35. Plaintiff alleges that she has never seen "any agreement that would subject her claims to arbitration." *Id.* at ¶ 37. Megabus does not dispute that Plaintiff did not look up the Terms and Conditions on the website and did not review the arbitration agreement. (ECF No. 29, pp. 4-5). Rather, Megabus argues that it does not matter—because Plaintiff was informed that the Terms and Conditions were available online, she was obligated to review them

prior to accepting Megabus' service and riding the bus. Megabus contends that Plaintiff is bound by the Terms and Conditions, including the arbitration clause, whether or not she actually accessed them online and reviewed them. (ECF No. 29, pp. 4-5)

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") requires courts to enforce private arbitration agreements. *See New Prime Inc. v. Oliveira,* _ U.S. _, 139 S.Ct. 532, 536 (2019). The FAA declares that "[a] written provision in any ... contract ... to settle by arbitration ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized that the FAA evidences "a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). "[I]n deciding whether a party may be compelled to arbitrate under the FAA," the Court must determine: "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, subscribing to Retrocessional Agreement Nos. 950548, 950549, and 950646*, 584 F.3d 513, 527(3d Cir. 2009)).

The standard of review for a motion to compel arbitration may vary depending on the context of the motion. Compare *Noble v. Samsung Elecs. Am., Inc.*, 682 Fed.Appx. 113, 115 (3d Cir. 2017) (stating that "a motion to compel arbitration can be resolved under the same kind of standard applicable to a motion to dismiss") with *Quilloin v. Tenet Health Sys. Philadelphia, Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (stating that "motions to compel arbitration are reviewed under the Federal Rules of Civil Procedure summary judgment standard"). In *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013), the Third Circuit made it clear that

the appropriate standard of review depends on whether the motion to compel arbitration is anchored on the four corners of the complaint itself along with related cognizable documents, or requires pursuit of discovery. Where the parties rely only on the face of the complaint and incorporated documents to litigate the issue, then "a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id.* at 776 (quotations omitted). On the other hand, if the complaint and supporting documents are unclear, the court should permit limited discovery on the issue and evaluate the motion to compel arbitration under a summary judgment standard. *Id.*

The parties here agree that the Court can resolve the pending motion on the existing record as there is no dispute as to the material facts relative to the nature of the arbitration agreement and that Plaintiff, a telephone purchaser, did not review the arbitration agreement online. (ECF No. 29, pp. 4-5, 15, 20). Although the document containing the arbitration clause is not attached to Plaintiff's Complaint, it is attached to Defendants' motion and its content is undisputed. Neither party argues that discovery or further factual development is necessary. Rather, they agree upon the relevant facts and that the Court may decide the matter on the papers. The Court will do so.

## ANALYSIS

The crux of the matter facing the Court is whether a valid arbitration agreement exists. Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the Court has no authority to mandate the party to do so. The Court must apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The parties agree that Pennsylvania law governs the question of contract formation in this matter. (ECF No. 29, pp. 9-11, 15-17). "Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). "[E]xplicit agreement is essential to the formation of an enforceable arbitration contract." *Kirleis*, 560 F.3d at 163. As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties. *L.B. Foster Co. v. Tri–W Construction Co.*, 186 A.2d 18, 19 (Pa. 1962); *see also Shovel Transfer Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999). It is of further note that Pennsylvania "has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the [FAA]." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa.Super. 2013) (citations omitted).

Plaintiff argues that she was never presented with the terms of the arbitration clause, did not review them, and did not manifest an intention to be bound by them. She argues, therefore, that no contract was formed. "In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) (citing *Ingrassia Constr. Co., Inc. v. Walsh*, 486 A.2d 478, 483 (Pa.Super. 1984)). *See also Espenshade v. Espenshade*, 729 A.2d 1239, 1243 (Pa.Super. 1999) ("In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter.") (citation omitted).

As previously noted, the facts are undisputed.  Each time Plaintiff purchased a ticket to travel on a Megabus motor coach over the telephone, the ticketing agent informed Plaintiff that the ticket "may be subject to applicable terms."  Compl. at ¶ 33.  When Plaintiff "asked where those terms are located and what the terms specifically are," she was told "that if she wants, she can look online at Defendants' website for the full terms and conditions."  *Id*.  No ticketing agent ever told Plaintiff that her purchase may be subject to an arbitration agreement, much less recite the terms to her.  *Id*. at ¶ 35.  There is no dispute that Plaintiff has never seen "any agreement that would subject her claims to arbitration."  *Id*. at ¶ 37.  The dispute is whether the presence of arbitration terms on the website and the telephone agent's reference to the website in selling the tickets was sufficient to bind Plaintiff to the Terms and Conditions, including the arbitration clause.

This case is remarkably similar to *James v. Global TelLink Corp.*, 852 F.3d 262 (3d Cir. 2017), in that it also presents the situation where services are offered for purchase through one medium (an interactive telephone ticketing service) and the purchaser tries to bind users of those services to terms and conditions only accessible through a different medium (a website).  In *James*, the Third Circuit held that users of the defendant's telephone system for New Jersey prisons did not assent, under New Jersey contract law, to the defendant telephone service provider's terms of use or the arbitration provision contained therein.  The terms of use were available only on the provider's website.  The provider informed users each time they set up an account or deposited funds in their accounts that its services were governed by terms of use which could be reviewed by accessing the provider's website.[1]  Telephone users were not required to indicate assent to the terms of use to set up an account and/or use the system.

---

[1]  Users who created an account by telephone received the following audio notice:

The Third Circuit explained that the determination of whether parties entered into an enforceable arbitration agreement is governed by "ordinary state-law principles that govern the formation of contract." *Id.* at 265. Under New Jersey contract law, parties must mutually assent to terms of a contract in order to be bound by them. Further, "because arbitration involves a waiver of the right to pursue a case in the judicial forum, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." *Id.*

The Circuit held that there was no mutual assent and, therefore, no enforceable arbitration clause. It found it significant that users did not receive the provider's terms of use, users were not informed that merely using the provider's telephone service would constitute assent to those terms, terms and conditions were not immediately accessible to users, and users were never presented with the terms available on the provider's website. Ultimately, the Court affirmed the denial of the provider's motion to compel arbitration of users' lawsuit.

Megabus argued that *James* is distinguishable because it focuses on New Jersey contract law. The Court disagrees. As explained herein, the laws of Pennsylvania and New Jersey are essentially equivalent when it comes to the actual assent required to bind parties to an arbitration agreement. Megabus also argued that *James* is distinguishable because of the unique circumstances in which it arose—in a prison setting with few alternative choices. The Court disagrees. The question is not whether a consumer has other alternatives for the requested

---

> Please note that your account, and any transactions you complete…are governed by the terms of use and the privacy statement posted at www.offenderconnec.com. The terms of use and the privacy statement were most recently revised on July 3, 2013.

*Id.*

service, but whether the consumer has a meaningful chance to review and assent to an arbitration clause.

Megabus also cited to an unpublished decision of the Third Circuit, *Schwartz v. Comcast Corp.*, 256 Fed. App'x 515 (3rd Cir. 2007), to support their position that Plaintiff can be bound by the arbitration agreement publicly available on its website. *Schwartz*, decided before *James*, is distinguishable. In *Schwartz*, the Third Circuit held that a cable internet customer was bound by the terms of the defendant provider's subscription agreement. Although Megabus cites the case because the Court pointed out that a copy of the subscription agreement was always available for review on the provider's website, the key to its determination was that the record showed that the plaintiff had received actual notice of the subscription agreement (a physical copy) upon subscribing. *Id.* at 519 ("Comcast's evidence of its consistent practice regarding delivery of subscription agreements and of the conduct of the parties in this case constitutes prima facie evidence that Schwartz was aware that the services he accepted were being offered pursuant to a subscription agreement."). *Schwartz* is not controlling. It is neither on-point nor persuasive.

When it comes to the requisite intent for the formation of an arbitration agreement, Pennsylvania law is the same as New Jersey law—"explicit agreement is essential to the formation of an enforceable arbitration contract." *Kirleis*, 560 F.3d at 163. The Court holds that in the context of the transactions giving rise to this case there was no explicit agreement to arbitrate. Plaintiff, like the plaintiffs in *James*, did not receive the Megabus Terms and Conditions. She was merely informed by the ticketing agent that Megabus had terms and conditions which were available for review on its website. But the transaction was complete, and Plaintiff received her ticket, over the telephone without being required to review the Terms

and Conditions on the Megabus website. Reviewing and assenting to the Terms and Conditions on the website was not a necessary prerequisite to the completion of the sale. Megabus does not dispute that Plaintiff never accessed its website and never reviewed the Terms and Conditions, including those dealing with the arbitration clause.

The Court holds that Plaintiff cannot be bound by an arbitration clause that was only available for review on a separate medium where the transaction could be completed without requiring her to acknowledge review of the clause and express assent to its terms. Pennsylvania law requires explicit agreement. Under the circumstances, the Court finds that Plaintiff did not manifest an assent to the arbitration clause contained in Megabus' Terms and Conditions. Plaintiff did not agree, through words or deeds, to arbitrate her dispute with Megabus. The Court will not, and cannot, compel her to do so.

## CONCLUSION

AND NOW, this 14th day of May 2020, IT IS HEREBY ORDERED that Defendants' Motion to Compel Arbitration and Dismiss Plaintiff's Complaint is **DENIED**. (ECF No. 5).

BY THE COURT:

_/s/ William S. Stickman IV_
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE